### ARTHUR RANUM v. CLARA SWENSON AND ANOTHER.[1]

June 8, 1945.

No. 34,010.

[1]Reported in 19 N. W. (2d) 327.

*Frank J. Zima* and *Lauerman & Pfeiffer,* for appellants.

*W. A. Winter* and *A. H. Winter,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying defendants' motion for judgment *non obstante* or a new trial.

On November 15, 1943, shortly after 9:30 p. m., plaintiff was driving his automobile in a westerly direction in the business section of Glenwood, Minnesota, along that portion of Minnesota avenue lying between Franklin and Lincoln streets. At the same time, defendant Louise Carlson was driving the automobile of defendant Clara Swenson along the same portion of Minnesota avenue in an easterly direction, accompanied by said Clara Swenson and three others as passengers. Plaintiff asserts that he was driving about ten miles an hour and at all times was on his or the side of the street north of the center line, and that after crossing the Franklin street intersection he drove past a car parked parallel with the curb but back of a series of cars parked diagonally therewith. After passing this parallel-parked car, he saw the lights of defendants' automobile coming toward him from the opposite direction and on his side of the street. In not more than a second or two later, a head-on collision occurred north of the center line of the street. Plaintiff further testified that he saw that he could not avoid the collision; that he could not apply the brakes hard without skidding, because it was icy; and that defendants' car "just seemed like it jumped right onto me."

Defendants contend, however, that the collision occurred south of the center line on their side of the street, and that they were traveling only 15 or 20 miles per hour. They further assert that when they were crossing the Lincoln street intersection they had an unobstructed view of plaintiff's car approaching from the opposite Franklin street intersection; that they saw him cross into their driving lane, but that they had insufficient time to avoid the collision because the wheels of their car were channeled in an icy rut which prevented turning.

Although appellants' brief, contrary to Rule VIII(3) of this court (212 Minn. xli), does not contain a statement of the questions involved upon appeal, nevertheless, it is apparent that the only issues raised pertain to the alleged contributory negligence of plaintiff as a matter of law, whether the verdict was so excessive as to indicate passion and prejudice, and whether the trial court erred in its rulings on the admission of certain evidence. We observe, however, that the evidence clearly sustains the verdict as to defendants' negligence.

We first consider the issue of contributory negligence. Defendants contend that plaintiff traveled to within nine feet of the collision over a street surface that was dry, firm, and free of ice and snow, and that with ordinary care he could have stopped within 15 feet in time to avoid the collision. The evidence to the contrary, however, is ample to support a finding that the street was icy, covered with frost, and slippery. At least four witnesses besides plaintiff testified as to the icy condition. Even the defendant driver said there were icy ruts all over the street.

■ Defendants further contend that if plaintiff had looked he would have seen defendants' car on the wrong side of the street when it was passing over the opposite intersection and at least 174 feet or more away. They cite Chandler v. Buchanan, 173 Minn. 31, 35, 216 N. W. 254, 255, and Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145, to the effect that "A verdict cannot be permitted to rest upon testimony of a party having good eyesight that he did not see a moving automobile then in plain sight at a place to which his vision is specially directed." It should be noted that "both cases have been limited, distinguished, and explained to such an extent in later. cases as almost to make them unrecognizable as authorities." Abraham v. Byman, 214 Minn. 355, 360, 8 N. W. (2d) 231, 234. See, Shepard's Minnesota Citations for distinguishing cases too numerous to mention. Insofar as DeHaan v. Wolff, 178 Minn. 426, 227 N. W. 350, Hermanson v. Switzer, 188 Minn. 455, 247 N. W. 581, and similar cases follow the same doctrine, they fall into the same category of disrepute as author-

ities. We expressly reject the policy of applying arbitrary standards of behavior amounting in effect to rules of law to all cases without regard to surrounding circumstances.

■ Even though plaintiff had in fact seen defendants' car in the wrong lane at a distance of 174 or more feet, or at a substantially less distance, he had a right to assume, until it appeared otherwise, that the driver thereof would seasonably yield the right of way. It cannot be said with certainty that plaintiff's failure to look was a proximate cause at a time when, if he had looked, he might still reasonably assume that defendants would seasonably yield him the right of way. Contributory negligence involves two essential elements, namely, want of ordinary care plus causal connection. 4 Dunnell, Dig. & Supp. § 7015.

"* * * Regardless of how negligent plaintiff might have been, if his actions did not contribute to or were not a material element in the happening of the accident here involved, the defense of contributory negligence is not effective as against him."[2]

"* * * Whether the time ever came when it might be said that plaintiff should have realized that defendant was not going to seasonably yield the right of way and that an accident was imminent was * * * a question of fact and not one of law." Olson v. Byam, 176 Minn. 619, 620, 224 N. W. 256; Merritt v. Stuve, 215 Minn. 44, 9 N. W. (2d) 329.

■ Plaintiff testified that he did not see defendants' car until he was probably 40 or 50 feet past (west of) the parallel-parked car, and under cross-examination he estimated defendants' car then to be "40, 50, 60, or 80, 100, 90 feet, something like that, away from me, on the same side of the street." Earlier, he testified that it was "kind of hard to judge. I should judge from 50 to 60 feet probably." Later, he said it might have been from 50 to 100 feet distant when first seen. He declared that it was hard to judge

---

[2]Guile v. Greenberg, 192 Minn. 548, 551, 257 N. W. 649, 650. See, Gillson v. Osborne, 220 Minn. 122, 19 N. W. (2d) 1; Restatement, Torts, § 463; 38 Am. Jur., Negligence, § 213.

a car coming toward him, and that his statement of distance was only his estimate. Plaintiff lost consciousness immediately after the collision and had no opportunity to check or make careful on-the-spot estimates or measurements. By the location marks he placed on the plat of the scene of the accident, he indicated that he was 45 feet past the parallel-parked car and from 110 to 115 feet from defendants' car when he first saw the latter. On plaintiff's own testimony, defendants assert that plaintiff "traveled about 97 feet from where he first saw defendants' car to where the collision took place," and that traveling at his own estimate of ten miles per hour "he had from six to seven seconds to anticipate, turn out for and avoid defendants' car after he saw it, assuming that his testimony is true." Defendants assert that their car, approaching from the opposite direction, was "hardly moving at the time the cars hit." Startling as this evidence appears to be, we cannot establish contributory negligence as a matter of law with such mathematical nicety. After all, these statements of time, speed, and distance are only estimates. "In automobile collision cases this court has adopted a policy of hesitation when contributory negligence as a matter of law is attempted to be found on estimates." Salters v. Uhlir, 208 Minn. 66, 70, 292 N. W. 762, 764. The jury was not bound to accept estimates of speed and distance by plaintiff or by others. Estimates of speed, distance, and time, especially if made by the occupants of moving vehicles, even when danger is not imminent, involve widely varying factors of human error and are not in themselves to be regarded as conclusive. Arguments based upon such estimates may have considerable probative weight before the trier of fact, but little force before a court of review passing on an issue that has already been determined adversely to appellant.[3]

---

[3] Merritt v. Stuve, 215 Minn. 44, 9 N. W. (2d) 329; Kane v. Locke, 216 Minn. 170, 12 N. W. (2d) 495; Landeen v. DeJung, 219 Minn. 287, 17 N. W. (2d) 648; Salters v. Uhlir, 208 Minn. 66, 292 N. W. 762; Spencer v. Johnson, 203 Minn. 402, 281 N. W. 879; 4 Dunnell, Dig. & Supp. §§ 7033, 7034.

■ Here, the evidence was conflicting, and there were other estimates and facts to consider. Defendant Clara Swenson testified that she first saw plaintiff's car about one-quarter of a block, or about 80 or 85 feet, away, and that the crash occurred "about a second or two" later. If we take her estimate as accurate and assume that plaintiff was traveling ten miles an hour, then it might be inferred that defendants' car traveled as high as 60 miles an hour. Nothing more need be said to show the folly of basing contributory negligence as a matter of law on estimates. The jury, however, from Lesmeister's testimony, and from other testimony as well as from physical facts in the case, could reasonably find that defendants' car was traveling 40 miles or more per hour and that plaintiff had only about two seconds in which to avoid the onrush of it. Even at that late moment, can it be said as a matter of law that a reasonable person would assume that defendants would not seasonably yield the right of way by turning to the channel of traffic in which they belonged? Can it be said with certainty that there was still sufficient time for plaintiff to stop on a slippery surface (assuming that would have helped) or to adopt some other and safer course of conduct? There was but a fleeting moment left for plaintiff, as an ordinarily prudent person, to determine the wisest course to follow. A person's conduct in a moment of peril is not to be measured by the same standard of exactness as that gained from the wisdom of hindsight after the accident. Clearly, the issue of plaintiff's contributory negligence was a question of fact for the jury. Merritt v. Stuve, 215 Minn. 44, 9 N. W. (2d) 329; 4 Dunnell, Dig. & Supp. §§ 7020, 7033.

■ Necessarily we have reviewed the evidence, and the inferences to be reasonably drawn therefrom, in the light most favorable to plaintiff. There was a definite conflict of evidence. Clearly, the verdict was not based on mere conjecture or speculation. We cannot say that reasonable men might not come to the same conclusion as the jury. The evidence is ample to support the verdict. "* * * it is only where the evidence of contributory negligence is so clear as to leave no room for an honest difference of opinion among rea-

sonable men that the court can enter upon the province of the jury and direct a verdict for the defendant."[4]

We have carefully considered a number of decisions submitted in behalf of defendants. They are clearly distinguishable on the facts and not controlling. The words of each opinion "are to be read in the light of the facts of the case under discussion. To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court. General expressions transposed to other facts are often misleading." Armour & Co. v. Wantock, 323 U. S. 126, 132-133, 65 S. Ct. 165, 168, 89 L. ed.—.

■ Defendants contend that the verdict of $4,065 is excessive and appears to have been given under the influence of passion and prejudice. Plaintiff incurred medical and hospital expense of $114.75 and sustained damages to his automobile of approximately $550. This leaves about $3,400 as damages for personal injuries, loss of earning capacity, pain, suffering, and inconvenience. Plaintiff is a 53-year-old farmer with a life expectancy of about 18 years. His injuries aggravated an arthritic condition of 17 years' standing, and as a result he will suffer pain until he is further disabled by the formation of new bone which will eliminate or limit the painful movements of his back. Aggravation of an existing condition is compensable. 2 Dunnell, Dig. & Supp. § 2571. The cartilage connecting his left ribs to the lower portion of the sternum was torn loose, and as a result he will suffer chest pains until new bone formations take place, with consequent impairment of chest movement. Since the accident, plaintiff has been able to do only light work, and this with inconvenience and pain. As a farmer, in a time of acute manpower shortage, he has been very much handicapped. Farm work as a general rule is anything but light. "It was also permissible for the jury in assessing damages to consider

---

[4]Klare v. Peterson, 161 Minn. 16, 18, 200 N. W. 817, 818. See, Solberg v. Minneapolis St. Ry. Co. 214 Minn. 274, 7 N. W. (2d) 926; Oxborough v. Murphy T. & S. Co. 194 Minn. 335, 260 N. W. 305; 4 Dunnell, Dig. & Supp. §§ 7033, 7048.

the present low value of money and the high cost of living." Kerzie v. Rodine, 216 Minn. 44, 48, 11 N. W. (2d) 771, 773. We find the verdict of $4,065 to be reasonable and not indicative of passion or prejudice.

■ We decline to consider assignment of error No. 8 as to alleged errors of the trial court in sustaining plaintiff's objections and in striking certain answers to questions. "An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection." Kaehler v. Kaehler, 219 Minn. 536, 537, 18 N. W. (2d) 312. No obvious error appears.

■ Assignment of error No. 9 brings nothing before the court for review. As to the ruling of the court, no exceptions were taken in the course of the trial, and no appropriate specifications of error were inserted in the motion for a new trial.

"In the absence of exceptions, errors of law on the trial will not be considered on a motion for a new trial, or on appeal, unless they are clearly specified in the notice of motion for a new trial." 5 Dunnell, Dig. & Supp. § 7091; 1 *Id.* § 358a; Minn. St. 1941, § 547.03 (Mason St. 1927, § 9327).

We find nothing in the rulings of the court prejudicial to defendants. The verdict is sustained by the evidence. There is no basis for granting judgment notwithstanding the verdict or a new trial.

Affirmed.